UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:25-cv-00024-GFVT |
| | ) | |
| v. | ) | |
| | ) | **OPINION** |
| $247,756.21 IN US CURRENCY, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants, | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| BULLION TRADING LLC, *et al.*, | ) | |
| | ) | |
| Claimants. | ) | |

*** *** *** ***

This matter is before the Court on claimants Bullion Trading LLC and Kahan Trading

LLC's Motion to Dismiss the Verified Complaint. [R. 20]. Because the United States has met its

burden sufficient to survive a motion to dismiss, the Court **DENIES** the Claimants' motion.

**I**

In May 2024, an elderly woman residing in Paris, Kentucky fell victim to a financial

scam. Scammers, posing variously as bank representatives, government agents, and law

enforcement, convinced the Kentucky victim to purchase hundreds of thousands of dollars'

worth of gold. She did so from Bullion Trading LLC, a gold and silver dealer in New York. [R.

1-1 at 3–6]. The scammers gained the victim's confidence by claiming that someone had hacked

her accounts and that they were going to help her regain control. [*Id.* at 3–4]. Brazenly, as the

fraud advanced further, confederates to the scheme visited the victim at her home to collect the

purchased gold for "safe keeping." [*Id.* at 4]. The scammers walked away with $224,000 worth

of gold after one of these visits. [*Id.* at 4–5]. The Kentucky victim later wired another $247,756.21 to Bullion Trading to complete another gold order on May 29, 2024. [*Id.* at 5].

On June 4, 2024, the Kentucky victim realized that she had been duped. [*Id.*] At this point, she contacted law enforcement and then approached Bullion Trading to cancel her second gold order. [*Id.*] Yitzchok Kahan, the owner of Bullion Trading, confirmed that he cancelled the second order and told her that he would return her money less a $17,000 "fee." [*Id.* at 6]. The Kentucky victim had her bank, Fifth Third, submit a wire recall request to Bullion Trading. That wire recall was unsuccessful. [*Id.*]

After meeting with the Kentucky victim, the Federal Bureau of Investigation met with Mr. Kahan on June 11, 2024. [*Id.*] Kahan was cooperative and informed the FBI that he suspected other customers may be involved in the same scam and provided the FBI with the names of other potential victims who purchased gold from Bullion Trading. [*Id.*] The FBI identified one of these customers as an elderly woman living in Grafton, West Virginia, who also fell victim to the same scammers. [*Id.* at 6–10]. The West Virginia victim also wired money to Bullion Trading and encountered similar issues trying to get a full refund from Mr. Kahan. [*Id.* at 9]. The West Virginia victim's son also contacted Mr. Kahan to inquire about the seemingly arbitrary "fees" that Mr. Kahan claimed entitlement to. Mr. Kahan refused to provide the son with any documentation regarding the so-called "fee," claimed he would waive the fee but still charge a "commission," and then threatened the son that he would instruct his attorneys to drag out legal action against any attempt to reclaim the fee or commission amount. [*Id.*]

The FBI obtained financial records and conducted an analysis of the movement of victim funds sent to Bullion Trading as part of the scam. [*Id.* at 11–12]. The FBI determined that Kahan was the beneficial owner of three Waterfall Bank accounts and that all three of the accounts were

2

involved in the receipt and movement of funds attributed to known and potential victims of the fraud scheme between May 29, 2024, and July 15, 2024. [*Id.* at 12]. The FBI began administrative forfeiture proceedings, seized the Defendant Currency,  and notified Mr. Kahan and Kahan Trading LLC, another one of his companies. [*Id.*]

On January 31, 2025, the United States filed the Complaint in this case and moved for the issuance of a Warrant in rem. [R. 1; R. 2]. The United States Marshal Service took possession of the Defendant Currency. [R. 10]. On October 17, 2025, Kahan Trading and Bullion Trading, through counsel, submitted verified claims to the Defendant Currency. [R. 18; R. 19]. On the same day, the Claimants submitted this Motion to Dismiss. [R. 20]. The United States responded in opposition to the Claimants' motion, [R. 24], and the Claimants filed a reply brief, [R. 25]. The motion is fully briefed and ripe for adjudication.

## II

"A motion to dismiss for failure to state a claim in a civil forfeiture proceeding is evaluated under 18 U.S.C. § 983 and Rule G of the Supplemental Rules." *United States v. $142,140.00 in U.S. Currency*, No. 1:21CV1616, 2022 WL 1120383, at *2 (N.D. Ohio Apr. 14, 2022). As in any motion under Fed. R. Civ. P. 12(b)(6), the Court accepts as true all allegations of material fact and construes them in the light most favorable to Government as the non-moving party. *Id.* at *3. "In a civil forfeiture action the government bears the burden of proving, by a preponderance of the evidence, that the property is subject to forfeiture." *United States v. One Silicon Valley Bank Acct., 3300355711, In the Amount of One Hundred Thirteen Thousand Nine Hundred Fifty-Two & 62/100 Dollars* ($ 113,952.62), 549 F. Supp. 2d 940, 949 (W.D. Mich. 2008) (citing 18 U.S.C. § 983(c)(1), (c)(3)). Pleading requirements for civil forfeiture actions differ slightly from other civil actions. *United States v. Real Prop.*, No. 6:18-CV-315-REW,

2021 U.S. Dist. LEXIS 8344, at *5–6 (E.D. Ky. Jan. 15, 2021). "A complaint in a civil forfeiture action must 'state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.'" *United States v. Six Thousand Dollars in United States Currency*, No. 1:11-cv-692, 2012 U.S. Dist. LEXIS 85623, at *4 (S.D. Ohio June 20, 2012) (citing Fed. R. Civ. P. Supp. R. G(2)(f)). "The standard is higher than 'notice pleading,' but it remains a 'low bar.'" *Real Prop.*, 2021 U.S. Dist. LEXIS 8344, at *6 (citing *United States v. Aguilar*, 782 F.3d 1101, 1109 (9th Cir. 2015)). The pleading requirements of Supplemental Rule G "bring together the central procedures that govern civil forfeiture actions." Fed. R. Civ. P. Supp. R. G notes of advisory committee on 2006 amendments.

As an initial matter, the Claimants must have Article III standing to contest a government forfeiture action. *United States v. Real Prop. Located at 4527-4535 Michigan Ave., Detroit, Mich.*, 489 F. App'x 855, 857 (6th Cir. 2012). Supplemental Rule G demands this also by requiring claimants to "state the claimant's interest in the property" under penalty of perjury. Fed. R. Civ. P. Supp. R. G(5)(a)(i). At the pleading stage, the Claimant's burden to establish standing is modest. *United States v. $1,756.03 in U.S. Currency*, 772 F. Supp. 3d 842, 868 (E.D. Mich. 2025). A Claimant's verified claims sufficiently allege their ownership of any Defendant Currency. *Id.* The Government does not challenge the Claimants' standing and the Court is satisfied that the verified claims of Bullion Trading and Kahan Trading meet the standing requirement.

The issue before the Court is whether the Government has stated sufficiently detailed facts in the verified complaint to support a reasonable belief that they will be able to meet their burden of proof at trial. The Claimants, Bullion Trading and Kahan Trading, advance two arguments in support of their motion to dismiss. First, they argue that the complaint fails to

4

allege sufficient facts establishing that the Defendant Currency constitutes proceeds of specified unlawful activity. [R. 20-1 at 5–7]. Second, they argue that the complaint fails to allege sufficient facts establishing that the defendant currency was property involved in money laundering. [*Id.* at 7–10]. In response, the Government counters that it has met its burden at the pleading stage. [R. 24]. Because both arguments raise similar theories, the Court addresses them together.

**A**

Claimants argue that the verified complaint does not establish that the defendant currency are "proceeds" of specified unlawful activity. [R. 20-1 at 5]. The verified complaint states that the property "derives from proceeds traceable to violations of 18 U.S.C. §§ 1334, 1349, and 2315" as well as "violations of 18 U.S.C. §§ 1956 and 1957." [R. 1 at 1]. In relevant part, the government argues that the Defendant Currency is traceable as proceeds of wire fraud, conspiracy to commit wire fraud, receipt of stolen money, and/or money laundering.

The civil forfeiture statute defines "proceeds" as follows:

> (A) In cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.

18 U.S.C. § 981(a)(2)(A). "Proceeds of a fraud is defined as 'property that a person would not have but for the criminal offense.'" *United States v. Coffman*, 859 F. Supp. 2d 871, 875 (E.D. Ky. 2012). The government can satisfy this standard even where money flows from legitimate transactions because the government has inherent authority to seize the proceeds that result, directly or indirectly, from a conspiracy to commit fraud. *United States v. $72,050 in U.S. Currency*, 587 F. App'x 241, 243 (6th Cir. 2014); *see also United States v. Warshak*, 631 F.3d 266, 332 (6th Cir. 2010) (rejecting argument that "legitimate" sales are not subject to forfeiture).

The crux of Claimants' argument is that the Defendant Currency is not subject to forfeiture because the Claimants "were legitimate and innocent third-party vendors whose services were exploited by the perpetrators to carry out a fraud scheme." [R. 25 at 9]. The transactions were perfectly legal, they argue, even if they were part of a scheme by the perpetrators to extract money from unwitting victims. But civil forfeiture "requires the involvement only of the *property* in a criminal act." *$1,756.03 in U.S. Currency*, 772 F. Supp. 3d at 877. "The Government ordinarily need not prove—let alone allege—a claimant's culpability for unlawful conduct to forfeit their property in civil proceedings." *Id.* (citing *United States v. Approximately $299,873.70 Seized From a Bank of Am. Acct.*, 15 F.4th 1332, 1341 (11th Cir. 2021)) (citation modified). Further, the applicable statutes place the burden on the Claimants to establish their innocence, rather than on the Government to establish any culpability, and any "innocent owner" defense is an issue for the trier of fact and irrelevant at the pleadings stage. *Id.*

At this stage, the issue is whether the verified complaint contains enough factual allegations to support that the property is subject to forfeiture. *One Silicon Valley Bank Acct.*, 549 F. Supp. 2d at 949. Rule G requires the complaint to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f). The civil forfeiture statute establishes what the Government's burden of proof would be at trial:

> In a suit or action brought under any civil forfeiture statute for the forfeiture of any property—
>
> > (1) the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture;
> >
> > (2) the Government may use evidence gathered after the filing of a complaint for forfeiture to establish, by

> a preponderance of the evidence, that property is subject to forfeiture; and
>
> (3) if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense.

18 U.S.C. § 983(c). The verified complaint alleges particularized facts supporting a reasonable belief that the Government would be able to prove, by preponderance, that the Defendant Currency is subject to forfeiture. The complaint argues that the Defendant Currency is subject to forfeiture as proceeds of wire fraud, conspiracy to commit wire fraud, receipt of stolen money, and as property involved in money laundering or a conspiracy to commit money laundering. [R. 1-1 at 1]. The Court will address the alleged facts to each of these theories.

The Code criminalizes wire fraud in the following language:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

18 U.S.C. § 1343. The Code similarly punishes attempts and conspiracies to commit wire fraud. *Id.* § 1349. The Complaint is replete with allegations of the underlying wire fraud. The scammers convinced the victims to purchase gold from Bullion Trading which the scammers then collected in person from the victims under the false pretense that such action was necessary to protect their financial accounts from hacking. [*See* R. 1-1 at 3–9]. That is a textbook example of wire fraud.

The Code also criminalizes the "receipt of stolen goods, securities, or moneys," defined as:

7

> Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, or pledges or accepts as security for a loan any goods, wares, or merchandise, or securities, of the value of $500 or more, which have crossed a State or United States boundary after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken . . . Shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 2315. The verified complaint likewise details the extent to which the Defendant Currency remained in Claimants' accounts despite Claimants' knowledge that the funds were attributable to known victims of financial fraud. [R. 1-1 at 10–12]. The complaint alleges that Claimants refused to approve wire recall requests sent by the victims' banks and instead moved the money to various accounts in an apparent attempt to prevent the funds from being available to fulfill the recall requests. [*Id.*]

Finally, the verified complaint alleges that the Defendant Currency was involved in money laundering or derived from specified unlawful activity, in violation of 18 U.S.C. §§ 1956 and 1957. The civil forfeiture statute, 18 U.S.C. § 981(a)(1)(A), subjects to forfeiture "any property . . . involved in a transaction or attempted transaction in violation of" sections 1956 and 1957. "Money laundering forfeiture is required for all property 'involved in' the crime, which can include clean or legitimate money that is comingled with tainted money derived from illicit sources." *Coffman*, 859 F. Supp. 2d at 875. The Government has plead sufficient facts that the Defendant Currency constituted property involved in a fraudulent financial transaction whose "source" and "ownership" the perpetrators sought to "conceal or disguise." *See* 18 U.S.C. § 1956(a)(1). In the underlying scheme, the perpetrators sought to conceal their fraud by convincing their victims to purchase gold from Bullion Trading and then provide that gold to the scammers. [*See* R. 1-1 at 5]. Indeed, the Claimants do not dispute that this is what occurred but

8

rather claim that because the Claimants had nothing to do with the fraud, they are entitled to retain the funds. Again, this is an immaterial point where the Defendant Currency is involved in a criminal act. *$1,756.03 in U.S. Currency*, 772 F. Supp. 3d at 877.

Construing as true the allegations contained in the verified complaint, the Court is convinced that sufficient factual allegations exist supporting a finding that the property is subject to forfeiture. Further, the Government points out that the United States already established probable cause at the time of the seizure of the Defendant Currency. [R. 24 at 7 (citing E.D. Ky. Case Nos. 5:24-mj-5224-MAS; 5:24-mj-5259-MAS)]. "Probable cause is a higher standard than the reasonable belief required for filing a civil forfeiture complaint." *United States v. 12 Parcels of Real Prop.*, No. 16-CV-43-JMH, 2017 U.S. Dist. LEXIS 161810, at *6–7 (E.D. Ky. Sep. 29, 2017). Since the United States has already cleared that higher burden as to the Defendant Currency, the Court can deny the motion to dismiss on these grounds alone. *Id.* at *7. The Defendant Currency is clearly subject to civil forfeiture.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that the Claimants Motion to Dismiss **[R. 20]** is **DENIED**.

This 18th day of May, 2026.

Gregory F. Van Tatenhove
United States District Judge

9